KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
  liser@kwikalaw.com
GREGORY S. GABRIEL (SBN 239902)
  ggabriel@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for
SKELL, INC.,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SKELL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DAVID FUTRELL, an individual; DOES 1 – 10, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF LANHAM ACT §1114** <br><br> **JURY TRIAL DEMANDED** <br><br> Trial Date:    None Set |

COMPLAINT

## THE PARTIES

1. Plaintiff Skell, Inc. ("Skell") is a California corporation with its principal place of business in Santa Monica, CA.

2. Skell is informed and believes, and based thereon alleges that Defendant David Futrell ("Futrell") is an individual and citizen of Kentucky.

3. Skell is unaware of the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by fictitious names. Skell will seek leave of this Court to amend this Complaint to allege their true names and capacities when ascertained.

4. Futrell and Does 1 through 10 are collectively referred to herein as "Defendants".

## JURISDICTION AND VENUE

5. This action arises under the Lanham Act, 15 U.S.C. § 1125(a). Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121(a).

6. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) (2) because this judicial district is where a substantial part of the events or omissions giving rise to the claim occurred.

## STATEMENT OF FACTS

7. Skell is the manufacturer of the popular Bug-A-Salt insect eradication device ("Bug-A-Salt"). The Bug-A-Salt is a plastic replica shotgun that shoots ordinary table salt at flies and other insects instantly killing them.

8. Skell owns the following federal trademark registrations which it uses on the Bug-A-Salt itself and/or its packaging (collectively the "Skell Marks"):

    a. BUG-A-SALT, (U.S. Trademark Registration Nos. 4353779 and 4202717);

    b. FIRE YOUR FLY SWATTER (U.S. Trademark Registration No. 4350005);

    c. A KILLER COMPANY (U.S. Trademark Registration No.

1 4351333);



d. THE ORIGINAL SALT GUN (U.S. Trademark Registration No. 4423289);

e. MR. PINCH (U.S. Trademark Registration No. 4353776);

f. an image of "Mr. Pinch," as depicted below (U.S. Trademark Registration No. 4353778);

g. PITY THE FLY along with an image of a fly in crosshairs, as depicted below (U.S. Trademark Registration No. 4612446)

9. Below are images of a genuine Bug-A-Salt in its original packaging identifying where the specific Skell Marks appear on the product and packaging.







[Image: BUG-A-SALT THE ORIGINAL SALT GUN advertisement excerpt, labeled "D." with red arrow, showing features: Salt-Viewing Window, Lift Cap Pour Salt (50 Shots), Pop-Up Site Indicates Ready-to-Fire]





10. The Bug-A-Salt has become so popular that Skell has had a difficult time keeping up with demand. This popularity has resulted in a large black market for the sale of counterfeit Bug-A-Salts. Skell has repeatedly been victimized by the sellers of counterfeit Bug-A-Salts through various online retail outlets such as Amazon.com and eBay.com, and elsewhere.

11. As part of its brand enforcement and protection efforts, Skell routinely audits sellers of Bug-A-Salts on various online retail platforms by purchasing units from such sellers and then inspecting those units to determine if they are genuine or counterfeit Bug-A-Salt products.

12. On or about June 8, 2017, in the course of monitoring the online marketplace for counterfeit Bug-A-Salt products, Skell came across a post on eBay by Futrell in which he purported to be selling "Authentic BUG-A-SALT Gun Fly Swatter[s]". Skell proceeded to purchase one of the allegedly authentic Bug-A-Salts from Futrell through his eBay listing, which Futrell shipped to Skell's offices in Santa Monica. Skell inspected and tested the Bug-A-Salt unit it purchased from Futrell's eBay listing and confirmed that it was a poorly manufactured counterfeit made to look identical to a genuine Bug-A-Salt (the "Counterfeit Product").

13. The Counterfeit Product and its packaging contain all of the Skell Marks in the same locations as the genuine Bug-A-Salt and its packaging. Images of the Counterfeit Product in its packaging, which highlights Defendants' unauthorized use of the Skell Marks are below:







14. On June 16, 2017, Skell sent Futrell a cease-and-desist letter informing him that he was selling counterfeit Bug-A-Salt units using the Skell Marks without authorization, among other violations of law. In the letter Skell demanded that Futrell immediately cease and desist further sales of the Counterfeit Product. Futrell did not respond to the letter.

15. On or about July 26, 2017, Skell purchased another counterfeit Bug-A-Salt from Futrell's eBay listing (the "Second Counterfeit Product"), which Futrell shipped to Skell's offices in Santa Monica. Skell inspected and tested the Second Counterfeit Product and confirmed that it was a poorly manufactured counterfeit made to look identical to a genuine Bug-A-Salt. The Second Counterfeit Product and its packaging were identical to the Counterfeit Product and its packaging depicted above and incorporate the Skell Marks without authorization in an identical manner as the Counterfeit Product and its packaging.[1]

---

[1] The Counterfeit Product and Second Counterfeit Product are collectively referred to as the "Counterfeit Products."

# FIRST CAUSE OF ACTION

## (Federal Trademark Infringement – 15 U.S.C. § 1114)

16. Skell realleges and incorporates herein by this reference the allegations of paragraphs 1 through 15 hereof, inclusive, as if set forth in full herein.

17. Defendants have willfully infringed and continue to willfully infringe Skell's federally registered trademark rights in the Skell Marks by using them on the Counterfeit Products and/or on the packaging for the Counterfeit Products without Skell's permission. Defendants' unauthorized use of the Skell Marks is likely to and has confused consumers.

18. The actions of Defendants in selling the Counterfeit Products as herein described has caused and will continue to cause Skell considerable economic damages in the form of lost sales. The actions of Defendants have also caused and will continue to cause Skell to suffer great and irreparable injury through, among other things, (1) likelihood of confusion, mistake, and deception amongst the relevant consuming public; and (2) the loss of valuable goodwill associated with Skell and the Skell Marks.

19. As a direct and proximate result of Defendants' willful acts of trademark infringement as set forth above, Skell has been damaged in a sum or sums presently unknown, but which will be proven at the time of trial. Accordingly, Skell is entitled to the full range of relief under the Lanham Act 15 U.S.C. § 1114, including without limitation, Skell's actual damages and lost profits, an accounting of Defendants' books and records to determine the totality of their respective profits from their infringement, and/or recovery of all of Defendants' profits arising from their acts of trademark infringement.

20. In addition, as a direct and proximate result of Defendants' willful acts of trademark infringement and use of "counterfeit marks" (as that term is defined in 15 U.S.C. §1116(d)(1)(B)) as herein alleged, Skell is entitled to treble its actual

damages, and to recover attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b). Furthermore, as a result of Defendants' use of "counterfeit marks" on the Counterfeit Products and the packaging for those products as herein described, Skell is also entitled to alternatively elect to receive enhanced statutory damages in an amount up to $2,000,000 per "counterfeit mark" used on the Counterfeit Products and the packaging for the Counterfeit Products for a total of up to $14,000,000 in statutory damages based on Defendants unauthorized use of the seven Skell Marks.

21. Skell has been, and unless enjoined by this Court, will continue to be, damaged and irreparably harmed by Defendants' continued unauthorized use of the Skell Marks on the Counterfeit Products and the packaging for the Counterfeit Products. Such irreparable harm constitutes an injury for which Skell has no adequate remedy at law. Accordingly, Skell is entitled to preliminary and permanent injunctive relief prohibiting Defendants from using the Skell Marks on the Counterfeit Products and the packaging for such products, or on any other products without Skell's authorization.

## PRAYER FOR RELIEF

1. Preliminary and permanent injunction prohibiting Defendants from using Skell Marks on any products, including without limitation the Counterfeit Products and the packaging for those products, without Skell's authorization; and

2. For actual damages in an amount to be proven at trial, or alternatively statutory damages in an amount of $14,000,000; and

3. That any actual damages awarded be trebled pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

4. For its attorneys' fees under the Lanham Act, 15 U.S.C. § 1117;

5. For Skell's costs of suit; and

6. Such other and further relief as the Court deems just and proper.

11094.00006/398846.1

12
COMPLAINT

DATED: August 23, 2017          KINSELLA WEITZMAN ISER
                                KUMP & ALDISERT LLP


                                By:    /s/ Gregory Gabriel
                                       Gregory Gabriel
                                       Attorneys for Plaintiff Skell, Inc.

# **DEMAND FOR TRIAL BY JURY**

Skell hereby demands trial by jury on all issues and causes of action triable by jury.

DATED: August 23, 2017        KINSELLA WEITZMAN ISER
                              KUMP & ALDISERT LLP


                              By:      /s/ Gregory Gabriel
                                    Gregory Gabriel
                                    Attorneys for Plaintiff Skell, Inc.